*41 OPINION OF THE COURT
William L. Ford, J.
By an order to show cause, the Town of Moreau, by its town board, has been required to show why a preliminary injunction should not be ordered restraining the respondent town from making payment of public funds pursuant to a resolution adopted by the town board on December 12, 1978, which purported to authorize a contract for the disposal of certain soil at the Caputo site where it is conceded polychlorinated biphenyls (PCBs) existed.
The petitioner, Robert H. Vittengl, a taxpayer residing in the town, has obtained a temporary restraining order which remains in effect pending the determination of this proceeding.
Pursuant to the resolution, the town entered into a contract dated December 18, 1978, for the removal of certain PCB contaminated soil with Newco Chemical Waste System, Inc., which has filed a verified answer with the court to the petition herein and has thereby appeared and participated in the proceedings without any objection and with the permission of the court.
The parties have stipulated that, because the grant of a preliminary injunction is tantamount to a decision on the merits, this exemplary hearing, being full and complete in all respects, and any determination thereon, shall be considered determinative also of any application for a permanent injunction.
The petitioner Vittengl contends that under all of the circumstances the town board should have advertised for public bids under the provisions of section 103 of the General Municipal Law prior to letting the contract and that, having failed to do so, the actions of the town board were illegal, public funds have been wasted, and the contract is invalid.
The petitioner does not allege fraud, collusion or any like wrongdoing.
The respondent town board contends that under all of the circumstances advertising for public bids was not required because an exception set forth in subdivision 4 of section 103 of the General Municipal Law was applicable in that an emergency or public health hazard existed and further because of an exception written into said section 103 by case law in that persons properly licensed and authorized to transport *42 and store PCBs were required by the Federal law mandating removal and disposal of PCB contaminated waste having a 500 parts per million level or higher; that, in any event, of the two companies in the northeastern part of the United States properly licensed and qualified to perform the necessary services, the board let the contract to the company which quoted the lower cost to the town; and so the respondent town board’s contention is that the actions of the town board were legal and the contract is valid.
The intervenor, Newco, agrees that the town’s contentions are correct and, in addition, it contends that the services called for by its contract with the town have been fully and properly performed and that it is entitled forthwith to payment in accordance with the contract.
Subdivision 1 of section 103 of the General Municipal Law provides: "Except as otherwise expressly provided by an act of the legislature or by a local law adopted prior to September first, nineteen hundred fifty-three, all contracts for public work involving an expenditure of more than [$5,000] and all purchase contracts involving an expenditure of more than [$3,000] shall be awarded by the appropriate officer, board or agency of a political subdivision or of any district therein including but not limited to a soil conservation district, to the lowest responsible bidder furnishing the required security after advertisement for sealed bids in the manner provided by this section.”
It is undisputed here that subject contract involves public work with cost to the town substantially in excess of $5,000.
Subdivision 4 of section 103 of the General Municipal Law provides: "Notwithstanding the provisions of subdivision one of this section, in the case of a public emergency arising out of an accident or other unforeseen occurrence or condition whereby circumstances affecting public buildings, public property or the life, health, safety or property of the inhabitants of a political subdivision or district therein, require immediate action which cannot await competitive bidding, contracts for public work or the purchase of supplies, material or equipment may be let by the appropriate officer, board or agency of a political subdivision or district therein.”
Was the action of December 12, 1978 of the town board, in finding that a health hazard existed, supported by the evidence then before it, or was it arbitrary and capricious?
The testimony and exhibits presented on this proceeding, *43 fairly weighed, show that the town board prior to its December 12, 1978 resolution had very recent evidence that PCB concentrations of over 7,000 parts per million existed in surface material at the pit site and 5,850 parts per million in an area some 300 feet distance from the pit area; that volatilization of the toxic material, and more particularly the PCBs therein, was an ongoing and dangerous circumstance in the area; that the materials at the Caputo site were disturbed during the year of 1977 by agents of the State while taking samples from the Caputo site for the purpose of taking measurements of the level of PCB contamination at such site; that during November, 1978, prior to learning of the existence of the Federal rules and regulations, the Town of Moreau had caused certain articles and waste materials containing PCBs to be collected in barrels at the Caputo site; that Federal rules and regulations promulgated pursuant to section 6 (subd [e], par [1]) of the Toxic Substances Control Act (US Code, tit 15, § 2605) which rules and regulations became effective April 18, 1978 and are published in the Code of Federal Regulations as 40 CFR Part 761, applied to the site, whether the site was disturbed or not, and set a dangerous level for PCBs at 500 parts per million and mandated removal and disposal of materials at the Caputo site by incineration or at an approved chemical waste disposal facility, with criminal and civil sanctions for violations; that such Federal rules and regulations have not been amended since their effective date; that Ward Stone, a State official, and well-qualified expert on PCBs, had warned the board on December 5, 1978, of the danger of PCB contamination and had stated that removal was the proper solution; that the health of area children had been allegedly affected by levels of PCB contamination, and that there was public concern in the town about the PCB problem.
In reviewing actions of a municipality or of one of its subsidiary boards, the scope of judicial review has been well stated in City of Syracuse v Hueber (52 AD2d 341, 344) where we find: "A reviewing court has no authority to substitute its judgment for that of the board or to set aside the board’s determination unless it clearly appears to be arbitrary or contrary to law”.
In Grimm v City of Troy (60 Misc 2d 579, 582) in refusing to grant a temporary injunction in a taxpayers’ action which challenged the purchase of certain garbage disposal equipment on an emergency basis without competitive bidding, the *44 court stated: "A municipality has the power to determine for itself what actions are necessary to promote the public welfare and the courts will not interfere with this legislative privilege except in rare instances. It is not within the province of a court to pass upon the wisdom of a statute conferring powers upon a municipality or other public body or the wisdom of the municipality in exercising the powers conferred. The courts do not sit in judgment upon questions of legislative policy or administrative discretion. It is only where a municipality’s contemplated actions are clearly without warrant of law that a court may interfere.”
Even if this court should not agree with the determination reached by the town board that a health hazard existed, this court cannot substitute its judgment for the judgment of the town board unless it can be said that the board’s determination of a public emergency health hazard clearly appears to be arbitrary or contrary to law.
While the purported declaration of a health hazard by the consolidated town board of health may have its legal imperfections, no one has pointed to any provisions in the Town Law which mandate a prior finding by a town board of health or a consolidated board of health that a public health hazard exists before the town board itself may make a declaration to that effect.
The court finds that section 1388 of the Public Health Law does not apply to the facts in this controversy because the level of PCB contamination at the Caputo site greatly exceeded 500 parts per million and required, therefore, affirmative action under the Federal rules and regulations.
The court further finds that the Federal rules and regulations have the full force and effect of law in the absence of any State regulations — and there was an admission by the petitioner that there are no State regulations relating specifically to PCBs — and so the Federal regulations apply.
The court further finds that the action of the town board in determining that a health hazard existed is amply supported by the evidence and does not clearly appear to be arbitrary or contrary to law. Thus, the contract would be an exception falling within the provisions of subdivision 4 of section 103 of the General Municipal Law exempting the contract from public bidding requirements.
Does subject contract require the services of a person or *45 corporation authorized by State and/or Federal law to transport and store or otherwise dispose of PCBs having a contamination level in excess of 500 parts per million for its legal and proper performance? If so, then case law appears to except the contract from public bidding requirements.
The evidence presented shows that PCBs are dangerous to health; that material contaminated with PCBs at a level of 500 parts per million presents an imminent and dangerous health hazard; that recognition and study of and research on PCBs is relatively new; that removal, transportation and disposal of this hazardous chemical waste can be legally and properly done only by a licensed person, firm or corporation; that disposal can legally and properly be accomplished only by incineration or at an approved chemical waste facility licensed by the Federal Government; that only two companies in the northeastern part of the United States are so licensed and one of them is the intervenor, Newco; that the evidence disclosed that in the United States there are no commercial incinerator plants which can be utilized to dispose of soil contaminated with PCBs from a dump site existing prior to the effective date of the Federal rules and regulations.
The petitioner relies upon the December 14, 1978 letter from William J. Librizzi, Chief, Office of Toxic Substances, Region II, United States Environmental Protection Agency, as approving, on a short term, temporary basis, the encapsulation plan put together by the town and the State. Such reliance is misplaced for several reasons.
First, if petitioner claims the benefit of the approval, he must accept that the Federal rules and regulations do apply; for if they do not apply, Librizzi’s approval is meaningless.
Second, once the Federal rules and regulations do apply— and this court finds that they do — an examination of the regulation clearly shows that no provisions for any waivers are found in the Federal rules and regulations which could apply to the Caputo site.
40 CFR 761.10 (b) (3) provides:
"(3) Soil and debris which have been contaminated with PCB’s * * * as a result of placement of PCB’s in a disposal site prior to the publication date of these regulations shall be disposed of
"(i) In an incinerator which complies with Annex I, or
"(ii) In a chemical waste landfill”.
*46 No provisions are found for any approvals as to other methods of disposition for this kind of PCB contamination.
However, if we consider the disposition of dredge spoils with which Dr. Hetling of EnCon — the Department of Environmental Conservation of this State — had most of his experience, 40 CFR 761.10 (b) (4) (i), (ii), (iii) provides as follows:
"(4) All dredge spoils and municipal sewage treatment sludges that are PCB mixtures shall be disposed of
"(i) In an incinerator which complies with Annex I, or
"(ii) In a chemical waste landfill which complies with Annex
II, or
"(iii) Upon application, a disposal Method to be determined by the Agency’s Regional Administrator in the EPA Region in which the PCB mixture is located”.
With respect to dredge spoils, an application may be made to the regional administrator for approval of an alternative means of disposal other than incinerator or disposal in an approved chemical waste landfill.
From the wording of the regulations, the court finds that no application for an alternative method of disposition of the contaminated soil in the Caputo site, other than incineration or disposal in an approved chemical waste landfill, is authorized.
Third, even were an alternate plan possible, the Federal rules and regulations require approval of the Regional Administrator of Region II of the Federal EPA, the region in which the Caputo site is situated. Librizzi does not purport to be, and there is no proof that he is, the regional administrator. Librizzi signs his letter as "Chief, Office of Toxic Substances.” The court finds that the purported approval of Librizzi has no force and effect for the reasons stated.
As before adverted to, the courts have carved by case law another exception — which does not appear in written form in section 103 — from the bidding requirements of section 103 of the General Municipal Law.
As early as 1858, in People ex rel. Smith v Flagg (17 NY 584, 587) — in a case involving a contract for the making of surveys and maps of the city wharves let without competitive bidding — the court stated: "In a large sense, the term 'work’ may include all labor, whether mental or corporeal, but it has also a more restricted sense, which may confine it to the *47 various kinds of manual labor, which may properly be the subject of general competition, and can be safely awarded to the lowest bidder. It would be an unreasonable and mischievous construction of the statute, to apply it to services which require in their proper performance scientific knowledge or professional skill.”
In a somewhat similar case involving plans, maps and estimates for the building of a proposed sewer disposal works which contract had been let without public bidding, the court in Vermeule v City of Corning (186 App Div 206, 208, affd 230 NY 585) stated: "The services rendered were of a technical nature and their value depended upon the skill with which the same were performed. In such instances it is not required that efficient services be sacrificed or impeded by the bidding system of municipal contracts.”
This court finds that proper performance of the contract between the town board and Newco required the license which Newco was issued by both the State and Federal Governments and that the storage facilities which Newco utilized were also required to be approved by the State and licensed by the Federal Government in the treatment and disposal of the hazardous PCB waste from the Caputo site, and further finds that this contract was not subject to public bidding requirements therefor.
The court further finds that there were only two licensed contractors in the northeastern part of the United States who could have disposed of by storage the soil contaminated with PCBs from the Caputo site, those two being the intervenor Newco and a corporation referred to as the S. C. A. Co.
The court further finds that the town secured quotes from both of these contractors, awarded the contract to the contractor submitting the lower quote, and that the action of the town board in adopting and executing the contract was legal and the contract is valid.
Other points raised by the petitioner have been considered and found to be without merit.
For the foregoing reasons, the temporary restraining order heretofore issued is vacated and annulled and the petition herein is dismissed with prejudice, with costs to the respondent and to the intervenor.